UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AYLA E.,

                Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

6:23-CV-06279 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Ayla E. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 7; Dkt. 12), and Plaintiff's reply (Dkt. 13).[1]  For the reasons discussed below, the Commissioner's motion (Dkt. 12) is granted, and Plaintiff's motion (Dkt. 7) is denied.

---

[1]    Plaintiff filed her motion as "Plaintiff's Brief in Support of a Social Security Appeal" rather than as a motion, but the Court will treat it as Plaintiff's motion for judgment on the pleadings.  (Dkt. 7).

**BACKGROUND**

Plaintiff protectively filed her application for DIB on June 10, 2017.  (Dkt. 3 at 154-60).[2]  In her application, Plaintiff alleged disability beginning January 1, 2014, due to Behcet disease, narcolepsy, inflammatory arthritis, bipolar disorder, depression, and hypothyroidism.  (*Id.* at 154).  Plaintiff's application was initially denied on September 25, 2017.  (*Id.* at 77-88).  A hearing was held before administrative law judge ("ALJ") John Loughlin on January 29, 2019.  (*Id.* at 38-58).  On May 1, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 16-26).  Plaintiff requested Appeals Council review; her request was denied on June 23, 2020.  (*Id.* at 7-12).

Plaintiff appealed the decision to the United States District Court for the Western District of New York, and on July 9, 2021, by Stipulation and Order, the parties agreed to remand the matter to the Commissioner for further administrative proceedings.  (Dkt. 3-1 at 303-05).  The ALJ held another hearing on September 6, 2022.  (*Id.* at 280-302).  On October 4, 2022, the ALJ issued an unfavorable decision.  (*Id.* at 251-72).  This action followed.

**LEGAL STANDARD**

I.   **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by

---

[2]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work

activities. *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.**    **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2018.  (Dkt. 3-1 at 254).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity during the period from her onset date of January 1, 2014, through her date last insured of December 31, 2018.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: Behcet's disease, narcolepsy, and idiopathic hypersomnia.  (*Id.*).  The ALJ further found that Plaintiff's medically determinable impairments of mild chronic inactive gastritis, a right upper ureteral stone, obesity, renal calculi, tobacco abuse, a urinary tract infection, an acute kidney injury, pyelonephritis, vaginitis and vulvovaginitis, dysfunctional uterine bleeding, glucose intolerance, a gastric ulcer, a mini-stroke, ureterolithiasis, pyelonephritis, nephropyelitis, HSV-1 dermatitis, costochondritis, primary iridocyclitis, age related nuclear cataracts, endothelial corneal dystrophy/Fuch's Dystrophy with bilateral edema, a subjective visual disturbance, punctate keratitis, ptosis, anisocoria, iritis, mild disc space narrowing in the lumbar spine, minimal degenerative changes in the left hip, mild patellofemoral joint space narrowing and osteophyte formation in the right knee, bipolar I disorder, anxiety, and OCD were non-severe.  (*Id*. at 256).  The ALJ did not find Plaintiff's hypothyroidism and rib impairment to be medically determinable impairments.  (*Id.* at 255).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 258). The ALJ particularly considered the criteria of Listings 14.09 and Listing groups 1.00, 2.00, 4.00, 11.00, 12.00, and 14.00, in reaching his conclusion. (*Id.* at 259-60).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff:

> can frequently kneel, crouch, stoop, and/or crawl, can occasionally climb stairs and/or ramps, can never climb ladders, ropes and/or scaffolds, can never operate a motor vehicle and/or heavy machinery and can never be exposed to unprotected heights and/or moving machinery parts. [Plaintiff] can understand and remember simple instructions, make simple work-related decisions, and carry-out simple instructions.

(*Id.* at 260). At step four, the ALJ found that Plaintiff was able to perform past relevant work as an office helper. (*Id.* at 269).

In the alternative, at step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of housekeeping cleaner, garment sorter, and ticket taker. (*Id.* at 271). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that the RFC is not supported by substantial evidence because the ALJ failed to adequately evaluate and sufficiently explain his assessment of multiple

medical opinions.  Plaintiff takes issue specifically with the ALJ's assessment of opinions offered by Muhammad Cheema, M.D., Haris Aziz, M.D., and Ya Li Chen, M.D.  The Court has considered Plaintiff's arguments and, for the reasons discussed below, finds that they are without merit, and that the Commissioner's decision is supported by substantial evidence in the record.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  It is well-settled that an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*.  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . .'  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).  However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination

is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, when a medical source provides one or more medical opinions, the Commissioner will consider the persuasiveness of those medical opinions using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). With respect to "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources . . ., the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at § 404.1520c(b). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. *Id.* at § 404.1520c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

### A. Opinion of Dr. Cheema

The Court turns first to Plaintiff's arguments relating to the ALJ's assessment of her mental limitations, including the opinions offered by treating provider Dr. Cheema. Dr. Cheema completed a psychiatric evaluation form on January 5, 2017. (Dkt. 3 at 1360-66). In it, he noted that he had been seeing Plaintiff since 2008. (*Id.* at 1360). In one portion of the form, Dr. Cheema noted that Plaintiff had a marked impairment in restriction of daily activities and in maintaining social functioning. (*Id.* at 1361). Dr. Cheema opined that Plaintiff was incapable of performing past relevant work on a regular, continuous, sustained basis for eight hours a day five days a week. (*Id.* at 1363). In another portion of the form, Dr. Cheema opined that Plaintiff had moderate limitations in understanding,

remembering, and carrying out instructions and moderate impairments in interacting with supervisors, co-workers, and the public.  (*Id.* at 1364-65).

The ALJ found Dr. Cheema's opinion unpersuasive.  He explained his reasoning as follows:

> Also, I considered the January 5, 2017 opinion from Dr. Cheema, who indicated [Plaintiff's] mental impairments generated moderate-to-marked limitations in several areas, including, for example socializing.  (16F at 2, 3, 4-7).  These findings are not well supported by Dr. Cheema's own treatment notes, and are inconsistent with the above-described evidence, and the record as a whole.  As previously noted, Dr. Cheema consistently observed that [Plaintiff] was cooperative, fully oriented, and well groomed, and exhibited calm motor activity, a euthymic mood, an appropriate affect, normal speech, intact thought processes, unremarkable thought content, intact memory, and fair insight and judgment. (8F at 1, 3; 20F at 3, 4, 6).  For these reasons, I find his opinion unpersuasive.

(Dkt. 3-1 at 257).  Plaintiff argues that the ALJ's explanation failed to sufficiently address the consistency requirement and also failed to consider the inherently subjective nature of mental impairments in assessing the opinion's supportability.  The Court disagrees.

While Plaintiff contends that the ALJ cited no evidence for the conclusion that Dr. Cheema's opinion was inconsistent with the medical record, this argument overlooks portions of the ALJ's decision that clearly cited evidence for that conclusion.  Specifically, the ALJ stated:

> The record does not establish that [Plaintiff's] ability to perform basic work activities was significantly limited by a mental impairment prior to the date last insured.  The record includes diagnoses of anxiety, bipolar 1 disorder, a somatization/somatoform disorder, OCD and depression. (6F at 13; 14F at 606; 19F at 6).  However, it includes very little mental treatment evidence, and medical treatment providers have usually observed wholly unremarkable mental functioning.  (6F at 13; 9F at 7, 21; 14F at 713; 18F at 2; 22F at 3, 16; 29F at 69; 32F at 81; 33F at 14, 590, 591).  On several occasions, [Plaintiff] reported to Muhammad A. Cheema, M.D., her mental treatment provider that she was doing well and tolerating her medications, with fair sleep and

> appetite.   (8F at 1, 3; 20F at 3, 4, 6).   The provider regularly observed
> unremarkable functioning, reporting that she was cooperative, fully oriented,
> and well groomed, and exhibited calm motor activity, a euthymic mood, an
> appropriate affect, normal speech, intact thought processes, unremarkable
> thought content, intact memory, and fair insight and judgment. (8F at 1, 3;
> 20F at 3, 4, 6).

(Dkt. 3-1 at 256).  Thus, contrary to Plaintiff's contention, the ALJ specifically noted that

there was very little evidence of mental health treatment received by Plaintiff, her medical

treatment providers generally noted unremarkable mental status, and she reported to Dr.

Cheema that she was doing well and tolerating her medications on multiple occasions.

These were appropriate considerations in assessing consistency.  *Maria T. v. Comm'r of

Soc. Sec.*, No. 21-CV-525 (JLS), 2024 WL 1341108, at *4 (W.D.N.Y. Mar. 29, 2024)

(rejecting Plaintiff's challenge to ALJ assessment of medical opinion where "the ALJ

found Dr. Ippolito's opinion inconsistent with Plaintiff's treatment records, which showed

only intermittent mental health treatment with no medication and generally benign mental

status examination findings").

In addition, in crafting the RFC, the ALJ relied on and addressed other medical

opinion evidence that he did find persuasive.  For example, state agency mental consultant

T. Inman-Dundon, Ph.D., concluded that Plaintiff had only mild limitation in each of the

broad areas of mental functioning.  (Dkt. 3-1 at 257).  The ALJ concluded that "[t]his

finding is supported by the evidence Dr. Inman-Dundon cited, and is consistent with the

above-described evidence, and the record as a whole . . ." (*Id.*).  Likewise, Todd Deneen,

Psy.D., mental consultative examiner, opined that Plaintiff had moderate limitations in her

ability to understand, remember, and apply complex directions and instructions but either

no limitation or mild limitation in the other areas.  (*Id.*).  The ALJ explained his reasons

for concluding that Dr. Deneen's opinion that Plaintiff's ability to understand, remember, and apply complex directions was inconsistent with and not supported by the record, but in all other respects, found Dr. Deneen's opinions persuasive. (*Id.* at 258). The RFC was consistent with these opinions and Plaintiff does not argue otherwise. *See, e.g., Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017) ("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning[.]").

Thus, when read as a whole, the ALJ's decision provides support for the conclusion that Dr. Cheema's opinion was not consistent with the record. *See Seth M. D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-01116 (JJM), 2024 WL 1130381, at *5 (W.D.N.Y. Mar. 15, 2024) ("Although ALJ Ba-Yunus's analysis might have been stated with more clarity, his decision, read as a whole, satisfies his obligation 'to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached.'" (quoting *Lopez obo Y.T. v. Commissioner of Social Security*, 2020 WL 4504987, at *2 (W.D.N.Y. 2020)).

Moreover, while mental impairments may not be readily susceptible to objective measurements, the ALJ was not wrong to take the lack of objective mental health findings under consideration. *Daniel E. v. Kijakazi*, No. 6:20-CV-1270 (DEP), 2022 WL 602533, at *6 (N.D.N.Y. Mar. 1, 2022) ("Although plaintiff is correct that mental impairments are not often conducive to being supported by extensive objective observations, that fact alone does not obligate an ALJ to accept a plaintiff's subjective reports regarding his mental symptoms and limitations without scrutiny. Rather, the ALJ must, as he or she should do in any case, assess whether the claimant's subjective reports of symptoms are consistent

with the available evidence by considering the relevant regulatory factors."); *Pollino v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 428, 437 (W.D.N.Y. 2019) ("While Plaintiff argues that objective findings are of less importance for mental impairments, even in those cases, it remains the ALJ's duty to evaluate opinion evidence in light of the entire record, and simply accepting Dr. Spurling's and Dr. Roemer's unsupported opinions relating to Plaintiff's ability to sustain fulltime work and absences would amount to an abandonment of that duty.").  As a result, it was not error for the ALJ to consider that Dr. Cheema's treatment records reflected reports that Plaintiff was doing well, tolerating medication, and exhibited calm mood, appropriate affect, and intact thought processes, in assessing the opinion's supportability.

In sum, Plaintiff's argument amounts to no more than a disagreement with the ALJ's weighing of the medical evidence in connection with his assessment of Dr. Cheema's opinion.  But it is not for the Court to reweigh the evidence, as it is the ALJ's duty to resolve conflicts among medical evidence in the record.  *See Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) ("The ALJ could have reached a different conclusion on the disputed medical record, but we defer to the ALJ's disability determination when it is supported by substantial evidence."); *Bryan F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0055-DB, 2021 WL 1737760, at *5 (W.D.N.Y. May 3, 2021) ("[I]t is within the ALJ's discretion to resolve genuine conflicts in the evidence.  In so doing, the ALJ may 'choose between properly submitted medical opinions.'" (quotation omitted)).

For those reasons, the Court finds no error in the ALJ's assessment of Dr. Cheema's opinion and remand is not warranted on this ground.

**B. Dr. Aziz and Dr. Chen**

Plaintiff next challenges the ALJ's assessment of the physical opinions in the record offered by Dr. Aziz and Dr. Chen.

Dr. Aziz, Plaintiff's primary care provider, provided two opinions: one dated November 23, 2016 (Dkt. 3 at 1351-59), and one from November 13, 2018 (*id.* at 1507-16). In the 2016 opinion, Dr. Aziz opined that Plaintiff could occasionally lift and carry up to 10 pounds, sit for 2 hours and stand for 30 minutes without interruption, continuously finger and feel but only occasionally reach or push/pull, and never operate foot controls. (*Id.* at 1351-54). She could sit for 8 hours, stand for 2 hours, and walk for 20 minutes total in an 8-hour workday. (*Id.* at 1352). She could never climb ladders or scaffolds or balance and occasionally climb stairs, stoop, kneel, crouch, or crawl. (*Id.* at 1355). Dr. Aziz indicated that Plaintiff could never be exposed to unprotected heights, moving parts, operating a motor vehicle, extreme cold or extreme heat. (*Id.* at 1356). He stated that her narcolepsy has not been completely controlled and as a result, most days she is very sleepy and unable to function. (*Id.* at 1357). Dr. Aziz opined that pain will negatively impact Plaintiff's productivity by greater than 20-25% on a bad day. (*Id.* at 1359).

Dr. Aziz's 2018 opinion indicated that Plaintiff could occasionally lift and carry up to 10 pounds, sit for 2 hours, stand for 30-40 minutes, and walk for 10-15 minutes, at one time without interruption. (*Id.* at 1508). She could sit for 3 hours, stand for 1 hour, and walk for 40 minutes total in an 8-hour workday. (*Id.*). He stated that she needs to stand

and walk in between periods of sitting for periods of 5-10 minutes. (*Id.* at 1509). She could occasionally reach, handle, finger, and push/pull, and operate foot controls. (*Id.* at 1510). She could never climb ladders or scaffolds, balance, or crawl. (*Id.* at 1511). He noted that her impairments affect her vision, and she is able to view a computer screen for short periods of time only. (*Id.* at 1511). He again opined that pain would negatively impact Plaintiff's productivity by greater than 20-25% on a bad day. (*Id.* at 1515).

The ALJ explained his reasons for finding Dr. Aziz's opinions unpersuasive:

> Dr. Aziz indicated that [Plaintiff] is treated for Narcolepsy, inflammatory arthritis and Behcet's disease, but he does not explain which limitations address which medical impairment (15F; 25F). On each occasion, Dr. Aziz opined [Plaintiff] was, among other limitations, limited to work requiring sedentary exertion. In November 2016, he found she could lift and/or carry 10 pounds occasionally, and could stand and/or walk less than two-and-a-half hours in eight. (11F; 15F at 1, 2). In November 2018, he opined she could sit, stand, and/or walk less than eight hours in an eight-hour workday. (25F at 1-3). On both occasions, Dr. Aziz also opined [Plaintiff's] pain would interfere with her ability to maintain concentration, persistence, or pace, and would likely cause significant interference with her social relationships at work, adding that she would have bad days during which her pain would limit her productivity by greater than 20 to 25 percent, and would make her miss at least two full days of work per month. (15F at 9; 25F at 9). These findings are not supported by Dr. Aziz's own examination reports. (4F; 26F). They are inconsistent with the above-described medical evidence, and the record as a whole. For example, as previously noted, treatment and examination providers have rarely, if ever observed, synovitis in the hands, wrists, elbows, shoulders, hips, knees or ankles, swelling or effusion of the joints, extremity weakness, abnormal gaits, instability, or muscle atrophy, which is consistent with the fingering, handling, reaching, lifting, carrying, standing, walking, postural, and/or environmental limitations Dr. Aziz assigned. For these and similar reasons, I find Dr. Aziz's opinions unpersuasive.

(Dkt. 3-1 at 267).

Dr. Chen submitted a January 7, 2019, opinion and his physician's assistant, Ann Marie Holly, RPA-C, completed the accompanying pain questionnaire. (*Id.* at 142-50).

Dr. Chen concluded that Plaintiff could occasionally lift and carry up to 20 pounds due to joint pain and inflammation. (*Id.* at 142). He opined that she could sit for one hour, stand for 30 minutes, and walk for 20-25 minutes at one time without interruption. (*Id.* at 143). Dr. Chen indicated that Plaintiff would need to lay down and take naps due to narcolepsy during the workday. (*Id.*). He indicated that she needs a combination of standing and walking between periods of sitting, and would need to walk for a distance of 1-5 feet in that time period. (*Id.* at 144). He opined that Plaintiff could occasionally reach, handle, finger, feel, and push/pull, and frequently operate foot controls, (*id.* at 145), but could never climb ladders or scaffolds, balance, stoop, crouch, or crawl (*id.* at 146). He stated that her vision impairment would preclude an ability to read in small print. (*Id.*). In the pain questionnaire, RPA-C Holly indicated that pain will prevent Plaintiff from performing her past work and interfere with her concentration, persistence, and pace and negatively impact her productivity by greater than 20-25% on a bad day. (*Id.* at 150).

The ALJ found the opinions from Dr. Chen and RPA-C Holly unpersuasive. He explained as follows:

> I also reviewed the January 7, 2019 opinion of Ya Li Chen, M.D., a treating rheumatologist. Dr. Chen opined, among other limitations, that [Plaintiff] could sit, stand, or walk less than eight hours, total, in an eight-hour workday. Additionally, she is limited in feeling, fingering, handling, reaching and operating foot controls (31F at 1-7). Such limitations are remarkably inconsistent with the above-described evidence, and the record as a whole. They receive little to no support in Dr. Chen's own examination reports, which usually reflect unremarkable functioning. (See, e.g., 6F at 13; 32F at 39, 61). For example, on April 16, 2015, his physician assistant, Ann Marie Holly, RPA-C, examined [Plaintiff] and her findings included full range of motion, no active synovitis, no deformities in the shoulders, elbows, wrists, small joints of the hands, hips, knees, ankle, and feet. (6F at 39). On July 6, 2017, his examination of [Plaintiff] revealed no active synovitis, full ranges of motion, a normal gait, and no musculoskeletal deformities. (6F at 13). On

December 31, 2018, just one week before the date of Dr. Chen's opinion, his physician assistant, Ms. Holly, examined [Plaintiff] and her findings included a pleasant female in no acute distress, oriented to person, time and place, was calm, displayed a logical thought process and exhibited no swelling or synovitis (32F at 81).

Inasmuch as Dr. Chen's opinion is inconsistent with the relevant period evidence, and are not supported by his own examination reports, I find Dr. Chen's opinion unpersuasive.

I considered the December 3, 2018 opinion of Ann Marie Holly, RPA-C, who found [Plaintiff's] pain would interfere with her ability to maintain concentration, persistence, or pace, and would likely cause significant interference with her social relationships at work, adding that she would have bad days during which her pain would limit her productivity by greater than 20 to 25 percent, and would make her miss at least two full days of work per month. (31F at 9). These findings are not well support by her own objective findings. For example, on July 6, 2017, Physician's Assistant Holly observed that [Plaintiff] was alert, oriented x3, exhibited a normal gait, full range of motion, no active synovitis, and no deformities in the shoulders, elbows, wrists, small joints of the hands, hips, knees, ankles and feet (7F at 12). On December 31, 2018, four weeks after her opinion dated December 3, 2018, Ms. Holly examined [Plaintiff] and her findings included a pleasant female in no acute distress, oriented to person, time and place, was calm, displayed a logical thought process and exhibited no swelling or synovitis (32F at 81).

Ms. Holly's opinion is similarly inconsistent with the rest of the above-described evidence, and the record as a whole. Accordingly, I find Ms. Holly's opinion unpersuasive.

(*Id.* at 268-69).

Plaintiff contends that the ALJ's conclusion that Dr. Aziz's and Dr. Chen's opinions were inconsistent with the medical evidence was vague and failed to provide an adequate explanation for the conclusory findings. But contrary to Plaintiff's contentions, and as is evident by the above-quoted language, the ALJ did not just make a conclusory finding but instead cited to numerous specific records and findings in these providers' own records and the record as a whole that were not consistent with their opinions. By identifying particular

records that conflicted with the conclusions in the opinions, the ALJ satisfied his duties pursuant to the regulations. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 11 (W.D.N.Y. 2021) ("As required by the new regulations, the ALJ explained his findings regarding the supportability and consistency for each of the opinions, pointing to specific evidence in the record supporting those findings.").

Likewise, to the extent that Plaintiff contends that the ALJ failed to explicitly consider the consistency between the opinions of Dr. Aziz and Dr. Chen, this argument also fails. In the first instance, the opinions were not entirely consistent. But importantly, the ALJ did expressly recognize that portions of the opinions were consistent with each other. For example, in connection with his assessment of Dr. Aziz's opinions, the ALJ dropped a footnote which stated: "These findings, as well as the *identical* findings by Ann Marie Holly, RPA-C—discussed later—do not attribute the claimant's mental limitation to a mental impairment, and, therefore, I did not consider them in determining whether the claimant's mental impairments were severe during the relevant period. I do note that they are not supported by Dr. Aziz and Physician Assistant Holly's own treatment notes, cited elsewhere, which do not reflect any significant mental abnormalities, and that they are inconsistent with the earlier-described mental treatment and examination evidence, which does not reflect greater than mild limitation in any broad area of mental functioning. Therefore, I find these portions of the opinions unpersuasive." (*Id.* at 268-69 n. 2 (emphasis

added)).   Thus, it is evident that the ALJ did consider the contents of the opinions with respect to each other.

In addition, contrary to Plaintiff's arguments, the ALJ did not assess these opinions in a vacuum, but also addressed other medical opinions in the record in crafting Plaintiff's RFC in manner that made clear the basis for his determination.  *Villier on behalf of N.D.D.R. v. Comm'r of Soc. Sec.*, No. 23-893-CV, 2024 WL 2174236, at *3 (2d Cir. May 15, 2024) ("To the extent Rodriguez faults the ALJ for failing to explicitly discuss the consistency of each medical opinion with specific other opinions, '[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision.'" (quoting *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013)).   For example, the ALJ found the opinion of the State agency medical consultant J. Poss, M.D., partially persuasive.  Dr. Poss opined that Plaintiff could perform light work and frequently kneel, couch, crawl, or climb; findings that the ALJ found were supported by Dr. Poss and largely consistent with other evidence in the record.  (*Id.* at 267). The ALJ also found the opinion of consultative examiner Harbinder Toor, M.D., somewhat persuasive.  (*Id.* at 269).   Dr. Toor found Plaintiff to have mild to moderate limitations to stand, walk, bend, lift, and carry.  (*Id.*).   The ALJ explained how Dr. Toor's examination records supported his opinions.  (*Id.*).   Plaintiff offers no meaningful argument as to why the ALJ's assessment of these opinions—which the ALJ largely credited—is not supported by the record or otherwise improper.  *See, e.g., Dana Lynn A. v. Comm'r of Soc. Sec.*, No. 20-CV-00968-MJR, 2021 WL 5410495, at *4 (W.D.N.Y. Nov. 19, 2021) (explaining that "the ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority,

the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination").

In short, the ALJ's written determination, which spans 22 pages in length, adequately discusses each of the medical opinions in the record and explains how he assessed the RFC.  Plaintiff has failed to demonstrate that the ALJ erred in his assessment of the medical opinions of record, or that the RFC is not otherwise supported by substantial evidence.  As explained above, the ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56; *see also Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 79 (2d Cir. 2018) ("Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, however, the ALJ was entitled to weigh all of the evidence available to make a residual functional capacity finding that was consistent with the record as a whole.").  The Court is satisfied that the ALJ has done so in this case and remand is accordingly not warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: August 2, 2024
        Rochester, New York

- 21 -